IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ABDELGHANI MESKINI, | * | |
| Petitioner, | * | |
| vs. | * | CASE NO. 4:14-CV-42 (CDL) |
| ATTORNEY GENERAL OF THE UNITED STATES *et al.*, | * | |
| | * | |
| Respondents. | * | |
| | * | |

O R D E R

Petitioner, a criminal alien who is subject to a final order of removal, seeks to be released from Respondents' custody because he believes that Respondents have detained him too long without removing him. The circumstances, of course, are more complicated than that, and a thorough review of those circumstances reveals that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Accordingly, his second amended petition for writ of habeas corpus (ECF No. 63) is denied.

BACKGROUND

I. **Pre-Final Order of Removal Events**

Petitioner is a native of Algeria. He entered the United States without admission or inspection in January 1995. On January 23, 2004, he pleaded guilty to the following serious federal felonies in the United States District Court for the

Southern District of New York: conspiracy to provide material support to terrorists; conspiracy to commit identification document fraud; transfer and attempted transfer of false identification documents; transfer and use of means of identification of other persons; trafficking in unauthorized access devices; effecting and attempting to effect transactions with unauthorized access devices; bank fraud; and possession of a firearm by an illegal alien. Order on Revocation of Supervised Release 1—2, *United States v. Meskini*, No. 1:00-CR-15 (S.D.N.Y. Oct. 27, 2010), ECF No. 58-6 on 4:14-CV-42 (M.D. Ga.). Petitioner was sentenced to seventy-two months of imprisonment, to be followed by five years of supervised release. *Id.* at 2. After he served his prison sentence, Petitioner settled in the Atlanta, Georgia area.

On November 10, 2009, the Immigration and Customs Enforcement Agency of the United States Department of Homeland Security ("ICE") took Petitioner into custody and served him with notice of its intent to seek his removal from the United States to Algeria based on his convictions for "aggravated felonies," as defined by the Immigration and Nationality Act. Ray Decl. ¶ 6, ECF No. 58-12; *see also* Notice of Intent to Issue Final Order of Removal ("Notice of Intent"), ECF No. 58-7. Petitioner did not contest the grounds for removal, but he did request withholding or deferral of his removal under the

2

Convention Against Torture ("CAT"), stating that he feared torture in Algeria and Morocco. Notice of Intent 2. An immigration judge ("IJ") then issued a final order of removal ordering Petitioner's removal to his native country, Algeria. Order of Removal (Nov. 25, 2009), ECF No. 58-8. Consistent with applicable law, Petitioner was interviewed by an asylum officer regarding his request for withholding and/or deferral of removal under the CAT, and on March 3, 2010, the asylum officer, finding Petitioner had a reasonable fear of torture in Algeria, referred Petitioner's case to an IJ. Notice of Referral to IJ, ECF No. 58-3.

Shortly after the case was referred to an IJ, the United States Probation Office for the Southern District of New York filed a petition to revoke Petitioner's supervised release that was imposed as part of his sentence for the prior criminal convictions. Ray Decl. ¶ 9. The United States Marshal took Petitioner into custody for the alleged supervised release violations on March 24, 2010, and the immigration proceedings were administratively closed. *Id.* ¶ 10. Petitioner's supervised release was revoked, and he served a prison sentence for his violations. *Id.* ¶ 11; *see also generally* Order on Revocation of Supervised Release, *United States v. Meskini*, No. 1:00-CR-15 (S.D.N.Y. Oct. 27, 2010), ECF No. 58-6 on 4:14-CV-42 (M.D. Ga.). When Petitioner completed that sentence, ICE took

him back into its administrative custody on June 22, 2012 so that his removal could proceed. Ray Decl. ¶ 13. On August 8, 2012, the IJ reopened proceedings for Petitioner's request for withholding and/or deferral under the CAT. Order Reopening Pet'r's CAT Req., ECF No. 58-13.

At his individual hearing with the IJ on March 12, 2014, Petitioner consented to removal to Morocco despite his previous request under the CAT for withholding and/or deferral to that country. Order on Pet'r's CAT Req. 37–38, ECF No. 58-15. On June 13, 2013, the IJ issued an order declining to defer Petitioner's removal to Algeria and granting Petitioner's request that he be removed to Morocco. *Id.* at 39. Thus, Petitioner was ordered removed to Morocco. The IJ's order created confusion because it resulted in two conflicting removal orders—one to Morocco and the previous one to Algeria. The IJ subsequently reconsidered her order at the request of the Department of Homeland Security ("DHS") and issued an amended order on June 24, 2013 that ordered Petitioner removed to Algeria, granted his application under the CAT for deferral of removal to Algeria, and again ordered Petitioner removed to Morocco. Am. Order on Pet'r's CAT Req. 39, ECF No. 58-14. DHS appealed the deferral of his removal to Algeria to the Bureau of Immigration Appeals ("BIA"). The BIA affirmed the IJ's decision to defer Petitioner's removal to Algeria. BIA Order

4

Dismissing DHS Appeal 4 (Dec. 19, 2013), ECF No. 58-17. But the BIA vacated the IJ's alternative order directing that Petitioner be removed to Morocco, finding that this part of the order was beyond the scope of the IJ's authority, which in these proceedings was restricted to the issue of whether removal should be withheld or deferred. *Id.* at 4–5. The BIA thus preserved DHS's authority to remove Petitioner to an alternative country.

On remand from the BIA on January 13, 2014, the IJ again deferred Petitioner's removal to Algeria under the CAT. Remand Order on Pet'r's CAT Req., ECF No. 58-18. Neither party appealed that order. Thus, Petitioner was subject to a final order of removal as of February 13, 2014.

**II. Post-Final Order of Removal Events**

As of today, Petitioner still has not been removed, and he is presently in administrative detention pending removal. Respondents contend that after the order of removal became final and they no longer had the option of trying to remove Petitioner to his native country of Algeria, they worked diligently to remove Petitioner to Morocco, Petitioner's country of choice. But Petitioner acknowledges the difficulties with such removal and, in fact, argues that he is not likely to be removed to Morocco in the reasonably foreseeable future.

5

On January 3, 2017, while his habeas petition was pending in this Court, Petitioner was transferred from ICE administrative custody to the custody of the Federal Bureau of Investigation pursuant to an indictment that had been returned in 2013 in the United States District Court for the Northern District of Georgia. Bretz Decl. ¶ 5, ECF No. 95-2. That indictment charged Petitioner with unlawful possession of a firearm between fall of 2007 and winter of 2008. Indictment, *United States v. Beltran*, No. 1:13-CR-2 (N.D. Ga. Jan. 3, 2013), ECF NO. 95-1 on 4:14-CV-42 (M.D. Ga.).[1] Petitioner pleaded guilty to the charge in the indictment on September 18, 2017 and was sentenced to twelve months imprisonment, with credit for time served, on January 5, 2018. Order Taking Judicial Notice, ECF No. 137; Clinton Decl. ¶ 6, ECF No. 146-1.

Respondents have presented evidence that while Petitioner was in United States Marshals Service custody for the criminal charge, they continued to prepare for his removal upon his return to ICE custody. During that interim, the IJ terminated the deferral of Petitioner's removal to Algeria, and the BIA subsequently dismissed Petitioner's appeal of that order. IJ Order Terminating Pet'r's Deferral of Removal 50 (June 13, 2013), ECF No. 131-1; BIA Order Dismissing Pet'r's Appeal (Nov. 22, 2017), ECF No. 144.

---

[1] Beltran is an alias for Petitioner.

Petitioner was returned to ICE custody on January 10, 2018 so that he could finally be removed. Clinton Decl. ¶ 6. Since Petitioner's return to ICE custody, Respondents have taken steps to accomplish his removal to Algeria. According to sworn affidavits, officials with ICE Enforcement and Removal Operations have provided the Algerian Consulate with copies of Petitioner's identity documents. *Id.* ¶ 8; Bernacke Decl. ¶ 6, ECF No. 149-1. The Algerian Consulate has replied, requesting Petitioner's fingerprints and photographs. Bernacke Decl. ¶ 8. And the Algerian Consulate has conducted a telephone interview of Petitioner. *Id.* ¶ 7; Clinton Decl. ¶ 8. Respondents have also requested the assistance of the United States Department of State to engage with senior officials of the Algerian government to request the issuance of Algerian travel documents for Petitioner. Harris Decl. ¶ 3, ECF No. 149-2. Respondents have engaged Algerian officials on multiple and regular occasions since January 2018 in preparation for Petitioner's repatriation. *Id.* ¶ 4; Clinton Decl. ¶ 8; Bernacke Decl. ¶¶ 7-8. According to ICE officials, they have received no indication from the Algerian government during this time that it will not repatriate him. Furthermore, experienced ICE officials opine that based on their experience of removing criminal aliens to Algeria, it is significantly likely that Petitioner will be removed to Algeria

in the reasonably foreseeable future. Clinton Decl. ¶ 9; Bernacke Decl. ¶ 9.

DISCUSSION

Petitioner submits a claim for habeas corpus relief pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). He claims that he has been held in ICE custody longer than the post-removal-period detention statute permits.[2] That statute provides: "An alien ordered removed who is . . . removable under [8 U.S.C. § 1227(a)(2) due to a conviction for certain crimes, including aggravated felonies,] . . . may be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). In *Zadvydas,* the Supreme Court interpreted the post-removal-period detention statute's permissive detention language to "limit[] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Supreme Court emphasized that the statute does not permit indefinite detention. *Id.* With a bit of interpretative magic, the majority grafted a six-month presumptively reasonable detention period on the statute that

---

[2] When an alien is subject to a final order of removal, the relevant statutory framework mandates that the alien be removed within the "removal period," a period of ninety days that begins on a certain date depending on the circumstances of the alien's case. 8 U.S.C. § 1231(a)(1). The alien must be detained during the removal period. *Id.* § 1231(a)(2). Recognizing the difficulty of removing every alien within ninety days, Congress provided the Attorney General with authority to detain certain criminal aliens beyond the ninety-day removal period. That authority is found in the post-removal-period detention statute.

8

allows immigration authorities to continue detaining criminal aliens for six months after a final order of removal is issued to accomplish the alien's removal. *Id.* at 701. Recognizing the need for an exception to its statutory creativity, the majority crafted the following standard for situations where an alien is not removed within the presumptively reasonable six-month period: "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

It would be disingenuous (and contrary to the holding of *Zadvydas*) to suggest that the length of time an alien has been in ICE custody is irrelevant to the *Zadvydas* calculus. It is after all the reason for the decision in the first place. But the Supreme Court in *Zadvydas* also recognized that a judge's review of such claims must include more than simply adding up the number of detention days and arbitrarily concluding based on an individual judge's notions of liberty and fairness whether the alien has just been held too long. *Id.* at 699–700 (instructing courts to consider certain factors in evaluating the alien's confinement). The underlying concern that *Zadvydas*

9

attempted to address is that aliens that the Government finds itself unable to remove not "be condemned to an indefinite term of imprisonment within the United States." *Id.* at 695. And the habeas court in determining whether the detention exceeds a period reasonably necessary to secure removal must "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. The Court's review, however, also "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive . . . efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Accordingly, "[o]rdinary principles of judicial review in this area recognize primary Executive Branch responsibility." *Id.* These principles "counsel judges to give expert agencies decisionmaking leeway in matters that invoke their expertise. . . . And they consequently require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway

10

when its judgments rest upon foreign policy expertise." *Id.* (citations omitted).

With these principles in mind, the Court examines Petitioner's complicated journey. Preliminarily, the Court observes that it is undisputed that Petitioner has no lawful right to be here. He is a criminal alien, and no one disputes that he is under a valid final order of removal. Furthermore, even if Petitioner were no longer subject to ICE confinement, he would still be subject to supervised release. Thus, his liberty could be constrained to reasonably assure his presence and protect the community. *See id.* (stating that an alien's release "should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances"). This Court does not read *Zadvydas* to be a permanent "Get Out of Jail Free Card" that may be redeemed at any time just because an alien was detained too long in the past. The Court's focus is on *today* and whether Petitioner will likely be removed in the reasonably foreseeable future based on the facts available to the Court *today*. The Court acknowledges the Supreme Court's observation that the length of prior detention is a factor that must be considered in deciding a reasonable length of time for future detention, but the Court does not understand that factor to necessarily be dispositive. Things do change. To ignore that

change would be as judicially irresponsible as ignoring the events leading up to it.

A strong argument exists that the *Zadvydas* removal period did not even begin until January 10, 2018 when Petitioner was returned to ICE custody after serving his criminal prison sentence. *See* 8 U.S.C. § 1231(a)(1)(B)(iii) (stating that the removal period begins on the date the order of removal becomes administratively final or the date the alien is released from detention or confinement, whichever is *later*).[3] If that is the case, neither the statutory ninety-day removal period nor the *Zadvydas* presumptively reasonable six-month removal period has expired.

Notwithstanding the strong arguments that *Zadvydas* does not yet apply in light of these recent developments, the Court does not need to rely solely on this straightforward analysis to

---

[3] Petitioner suggests that this criminal proceeding was some type of sham designed to toll the *Zadvydas* clock. *See* Pet'r's Resp. to Respondents' Supp. Opp. to 2d Amend. Pet. 5, ECF No. 136 (accusing the Government of "manipulation of the removal statute to evade the Court's jurisdiction"); *id.* at 2 (describing criminal proceeding as "unilateral actions designed to deprive the Court of jurisdiction" and describing transfer of custody from ICE to U.S. Marshal for criminal proceedings as intended to "evade review" of habeas claim). Such allegations ignore that the Petitioner pleaded guilty to the criminal charge, that his guilty plea was taken by a United States District Court judge who presumably determined that it was a knowing and voluntary plea supported by a factual basis, and that Petitioner received a twelve-month prison sentence that he did not appeal. Even if the criminal prosecution had the effect of avoiding a favorable *Zadvydas* recommendation by the Magistrate Court judge, the Court knows of no legal principle that would prevent the prosecutorial arm of the Government from proceeding with a legitimate prosecution or that would authorize such a prosecution to be considered as a factor supporting *Zadvydas* relief.

12

support its decision today. Even under the *Zadvydas* formula, the present record demonstrates that Petitioner has failed to show that that as of *today* it is significantly unlikely that he will be removed in the reasonably foreseeable future. To the contrary, the present record establishes that there is a significant likelihood that Petitioner will be removed to Algeria in the reasonably foreseeable future. The Court emphasizes that the proper perspective is *today.* Not whether someone may subjectively believe that Petitioner's rights have been violated in the past; and not even whether his *Zadvydas* rights may have been encroached upon at some arbitrary date months ago. This proceeding is not one for redress of a past statutory or constitutional violation. The question is, as of *this moment* and given the current circumstances, whether Petitioner is likely to be removed in the reasonably foreseeable future or whether he is not.

In making this determination, the Court considers Petitioner's prior detention, but it also recognizes that circumstances have changed. Most notably, since November 2017, there is no longer a restriction on removing Petitioner to Algeria. Moreover, expert deportation authorities believe that Algeria will accept Petitioner for repatriation, and the current record indicates that they are taking steps to make that happen. These are the type of Executive Branch foreign policy judgments

to which the *Zadvydas* Court cautioned judges to "listen with care." *Zadvydas*, 533 U.S. at 700. The Court finds no basis for second-guessing these officials or implicitly concluding that they have perjured themselves in some misguided effort to keep Petitioner detained.

The Court fully understands that cases may exist where an alien is truly "stateless." But contrary to Petitioner's plea, he is not.[4] The Court also understands that a superficial review of this case could create concern given the cumulative length of Petitioner's detention with ICE. It cannot be ignored, however, that Petitioner's administrative detention was interrupted by the consequence of his admitted criminal conduct and delayed, at least in part, due to his resistance to returning to his home country. The Court hastens to add that it does not fault Petitioner for seeking to avoid a return to Algeria under the CAT, but he should not be able to assert those rights, engage the procedural machinery to have his CAT claim heard, and then try to use the corresponding delay to his advantage to be returned to the streets of the United States instead of the neighborhoods of Algiers or Constantine. Because Petitioner has failed to show that he will not likely be removed in the foreseeable future and because the Government has shown that

---

[4] The Court also recognizes that circumstances may exist where someone who is not "stateless" but is subject to prolonged indefinite detention could be entitled to *Zadvydas* relief. Those circumstances do not exist here.

14

there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future, the petition for habeas corpus relief is denied.

CONCLUSION

For the reasons explained in this Order, Petitioner's second amended petition for a writ of habeas corpus (ECF No. 63) is denied. This action shall therefore be dismissed.[5]

IT IS SO ORDERED, this 14th day of March, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[5] Today's dismissal is without prejudice to the extent that Petitioner has the right to pursue habeas relief in the future if circumstances change, particularly if he has not been removed by July 10, 2018, which would be six months after he was returned to ICE custody.